UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

AIRCRAFT SERVICES RESALES LLC,

                Plaintiff,

    v.

OCEANIC CAPITAL COMPANY LIMITED,

                Defendant.

Civil Action No.:  09 CIV 8129

# PLAINTIFF AIRCRAFT SERVICES RESALES, LLC'S POST-TRIAL BRIEF

Dated: New York, New York
October 19, 2012

VENABLE LLP
By: J. Douglas Baldridge
575 7th Street, NW
Washington, DC  20004
Tel:  (202) 344-4703
Fax:  (202) 344-8300
jdbaldridge@venable.com

Caroline P. Gately (Not admitted in New York)
575 7th Street, N.W.
Washington, DC  20004
Tel:  (202) 344-4744
Fax:  (202) 344-8300
cpgately@venable.com

*Attorneys for Aircraft Services Resales LLC*

**TABLE OF CONTENTS**

*Page*

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

    I.    Oceanic Has Failed to Prove Its Sole Defense that
Aircraft Services' Damages are Limited to Liquidated Damages. ........................ 2

        A.    The Plain Language of Section 2.2 Does Not Limit Seller's
Damages, and There is No Need to Weigh Extrinsic Evidence. ............. 2

        B.    Even if the Court Were to Weigh the Extrinsic Evidence,
the Undisputed Evidence Is that the Seller Did Not
Agree to Limit Its Damages. .................................................................. 3

    II.    The Amount of Aircraft Services' Actual Damages is Undisputed. ................... 10

CONCLUSION ..................................................................................................................... 10

CERTIFICATE OF SERVICE ............................................................................................. 12

## INTRODUCTION

Pursuant to this Court's September 14, 2012 Order (ECF No. 39), Aircraft Services Resales LLC ("Aircraft Services") respectfully submits this post-trial brief, in light of the Court of Appeals' Order on appeal.

Oceanic admitted it breached the subject contracts by not closing on the purchase of the helicopters, and Oceanic's sole remaining defense is that the contracts limit Aircraft Services' claim for damages to $100,000 per contract. (ECF No. 33, Findings of Fact and Conclusions of Law at p.13, ¶¶6-7.) The only issue before this Court is whether Section 2.2 of the contracts limits the amount of Aircraft Services' damages.

This Court is compelled to rule that Seller's damages are not limited, for two reasons. First, at trial, this Court correctly concluded that the plain language of the contracts controls, but the Court of Appeals rejected the Court's interpretation of that plain language. The Court of Appeals concluded that Section 2.2. addresses only what Oceanic as Purchaser concedes in the event of its breach, not what Aircraft Services as Seller agreed to be limited to. Given the Court of Appeals' interpretation of the plain language of Section 2.2, this Court must now conclude that Aircraft Services' damages are not limited to $100,000 per contract, as a matter of law, without the need to weigh extrinsic evidence.

Second, even if the Court were to weigh extrinsic evidence, the undisputed evidence is that Aircraft Services did not agree to limit its damages. Oceanic offered no testimony or other evidence to the contrary, and the evidence supports only one reasonable conclusion: Aircraft Services did not agree to limit its damages. Oceanic raised no other defenses and did not dispute Aircraft Services' proof of actual damages either. Before this Court is a closed record devoid of *any* evidence contrary to the evidence introduced by Aircraft Services, and this Court therefore must enter judgment in favor of Aircraft Services for the full amount claimed, $6,914,166.

## ARGUMENT

I. **Oceanic Has Failed to Prove Its Sole Defense that Aircraft Services' Damages are Limited to Liquidated Damages.**

    A. **The Plain Language of Section 2.2 Does Not Limit Seller's Damages, and There is No Need to Weigh Extrinsic Evidence.**

In its Findings of Fact and Conclusions of Law, this Court concluded that "[t]he only reasonable interpretation of Section 2.2 is that which is consistent with its plain language . . . ." (ECF No. 33, at p.14, ¶11.) The Court adopted Oceanic's "plain language" interpretation: the Seller's damages are limited to the amount of Buyer's deposit. On appeal, however, the Court of Appeals rejected this interpretation of the plain language of Section 2.2.[1] The court ruled, "[T]he words of the section, taken literally, address only what *Purchaser* will concede in the event of its breach and do not expressly address the question whether Seller agrees to liquidated damages of $100,000 in that circumstance. The section does not explicitly purport to restrict the remedies available to Seller if Purchaser breaches." (Order at p.5, *emphasis in original*.) The court emphasized the fact that the contracts state that the "Purchaser . . . agrees . . . ," as opposed to "The parties agree" or "The amount of the Deposit shall constitute liquidated damages." (Order at p.5, n.2.) In other words, the plain language of Section 2.2 sets a minimum amount of damages but not a maximum for Aircraft Services.

Under the Court of Appeals' analysis, in order to conclude that Aircraft Services' damages are limited to $100,000, this Court would have to find from the evidence that the parties intended to "imply" a "parallel agreement of Seller to what Purchaser explicitly agreed to." (Order at pp.5-6.) But in this case Oceanic did not argue in favor of or present any evidence

---

[1] *Aircraft Servs. Resales LLC v. Oceanic Capital Co. Ltd.*, No. 10-3469, 2012 WL 3518036, at *2 (2d Cir. Aug. 16, 2012) ("Order").

supporting an implied agreement by Aircraft Services,[2] and the Court concluded after trial that the "plain language" of the contracts controls. The Court of Appeals has determined the proper interpretation of the plain language of the contract provision, and it does not provide for a limitation on Seller's damages. The Court may not now create a contract right from silence in the contract. *See Smith v. CPC Int'l, Inc.*, 1998 U.S. Dist. LEXIS, at *9 (S.D.N.Y. Feb. 26, 1998) (*citing Kirschten v. Research Inst. Of Am., Inc.*, No. 94 Civ. 7947, 1997 WL 739587, at *7 (S.D.N.Y. Sept. 24, 1997)); *Metropolitan Life Ins. v. RJR Nabisco, Inc.*, 716 F.Supp.2d 1504, 1515 (S.D.N.Y. 1989) ("contractual silence itself cannot create ambiguity to avoid the dictates of the parol evidence rule.")

The Court is therefore compelled to conclude as a matter of law that, by its plain language, Section 2.2 does not limit Aircraft Services' damages. There is no need to weigh extrinsic evidence of the Seller's intent or consent.

> **B.     Even if the Court Were to Weigh the Extrinsic Evidence, the Undisputed Evidence Is that the Seller Did Not Agree to Limit Its Damages.**

Even if this Court were to weigh the extrinsic evidence regarding whether Aircraft Services agreed to limit its damages, all of the evidence favors Aircraft Services. Aircraft Services filled the record with proof that *neither party* intended the contracts to impose a restriction on the amount of Seller's damages, as follows.

---

[2] Oceanic bears the burden of proving its affirmative defense that Section 2.2 is a liquidated damages clause. *Federal Deposit Ins. Co. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) *The Institute for the Dev. Of Earth Awareness v. People for the Ethical Treatment of Animals*, 768 F.Supp.2d 672, 679 (S.D.N.Y 2011). At trial, Oceanic place great weight on its argument that Aircraft Services had the burden of proof to invalidate what Oceanic contended to be an unambiguous liquidated damages clause. Putting aside whether that argument had any merit at trial, in light of the Court of Appeals' ruling, it is Oceanic's burden alone to prove its Fourth Affirmative Defense alleging that Section 2.2 limits Aircraft Services' damages. Oceanic presented no evidence.

First, Aircraft Services offered the unrefuted testimony of its Chief Operating Officer Jonathan Parker and Chief Executive Officer George Reenstra, both of whom testified about what Section 2.2 meant *at the time of contracting*.  Mr. Parker was clear that Aircraft Services never intended Section 2.2 to be a liquidated damages clause.  (7/29/10 Trial Transcript ("Tr.") at 14:10-13.)  At no point during contract negotiations did the parties discuss or mention the term liquidated damages or that the nonrefundable deposit would serve as Aircraft Services' sole and exclusive remedy in the event of a breach.  (Tr. at 12:20-25; 28:20-25; 30:11-13; 34:8-18.)  Section 2.2 simply was never even considered by the parties to be anything but a deposit clause.  The following testimony of Mr. Parker is unopposed.

> 25. There has been a dispute as to the meaning of Section 2.2 in the Agreements.  Section 2.2 of the Agreements is not a liquidated damages clause at all, but instead is a "Deposit" clause requiring Oceanic to make a deposit, that once released from escrow, was to be non-refundable.  It was not Aircraft Services' intention that this non-refundable deposit was to be Aircraft Services' sole and exclusive remedy should Oceanic default under the Agreements.  If that had been Aircraft Services' intention, I would have followed what is customary practice in the aircraft sales industry and included the language, "sole and exclusive," or language to that effect, in the agreements.  I did not use such language, nor did Ms. Erni or Mr. Wright ever suggest the addition of such language into the Agreements.
>
> 26. At no time did the parties discuss or decide that the $100,000 deposit for each helicopter was to serve as the sole and exclusive remedy for Aircraft Services should Oceanic default on its obligations under the Agreements.

(ECF No. 29, 6/22/10 Declaration of Jonathan Parker ("Parker Decl.") at ¶¶25-26.)

Second, Aircraft Services introduced evidence of Oceanic's clear understanding of its exposure for actual damages in the event of its breach.  Oceanic's Chief Operating Officer, Otu

-4-

Hughes,[3] advised the President of Oceanic (copying the Vice President of the legal department) of his understanding of the contracts:

> We [Oceanic] are contractually bound to put up the money and take delivery of these helicopters. If [Aircraft Services] wanted to, they could ask for liquidated damages which could in effect be *the gap between what we committed to pay [under the Contracts] versus what can be obtained for these helicopters in the market today plus financing and storage costs.*

(PX 120, emphasis added.) As the Court of Appeals correctly noted, this email is "extrinsic evidence of how Purchaser understood (or misunderstood) Section 2.2 and may therefore be probative of Purchaser's intent." Order at *3 n.4. Evidence of a party's understanding of the contract is not only admissible but is "deemed of great, if no controlling influence" in determining the meaning of the contract, especially when the party later contradicts itself in litigation. *Old Colony Trust Co. v. Omaha*, 230 U.S. 100, 118 (1913). In *Ocean Transport Line, Inc. v. American Philippine Fiber Indus.*, 743 F.2d 85 (2d Cir. 1984), the Court of Appeals for the Second Circuit evaluated whether documents generated by a party after the subject contract had been executed were relevant to interpreting its meaning. The court concluded that "the parties' interpretation of the contract in practice, prior to litigation, is compelling evidence of the parties' intent." *Id.* at 90-91 (citing *Old Colony*, 230 U.S. at 118). *See also Ottley v. Palm Tree Nursing Home*, 493 F. Supp. 910, 914 (S.D.N.Y. 1980) ("Few things can better evidence the meaning of a contract than the actions of the parties themselves."). Here, Mr. Hughes's acknowledgment (made after executing the contracts but prior to litigation) that Oceanic was liable for the gap between the contract price and the fair market value of the helicopters plus financing and storage costs, is compelling evidence of the contract meaning offered by Aircraft Services. There is no basis in the record (or otherwise) to contradict this acknowledgement, or to

---

[3] In his Rule 30(b)(6) deposition, Mr. Okoli identified Mr. Hughes as the Oceanic executive who "owned the transaction . . . ." (Okoli Rule 30(b)(6) Dep. at 36:1 & 22:19-23.)

suggest Oceanic's intent differed at the time the contracts were executed, and it was Oceanic's burden alone to present such evidence (if it existed) to support its affirmative defense. (*See* note 2 *supra*.)

Third, the numerous emails and other communications exchanged between the parties before, during, and after execution of the contracts reveal a single story ― the term "liquidated damages" was never mentioned, not once. It was not mentioned because the $100,000 amount referenced in Section 2.2 was well understood by the parties to be a nonrefundable deposit and nothing more. (PX 1, 3, 5-9, 11, 13, 14, 18-20, 22-25, 43, 49, 50, & 53.)

Fourth, there is a complete absence of any evidence that the parties attempted to estimate Aircraft Services' damages in the event of Oceanic's breach. A true liquidated damages clause is an estimate made by the parties at the time they entered into their agreement of the extent of injury that would be sustained as a result of a breach of the agreement. *See Truck Rent-A-Center, Inc.*, 361 N.E.2d 1015, 1018 (N.Y. 1977) (defining a liquidated damages provision as "an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of the breach of the agreement"); Oceanic Trial Brief at 14; Okoli Rule 30(b)(6) Dep. at 56:8-15 (a liquidated damages clause is "an attempt by the parties prior to breach to try to quantify exactly what damages will arise. . . ."). It is undisputed that the parties never made an attempt of any kind to estimate potential future damages prior to breach. (Tr. at 13:19-25.) Indeed, Mr. Parker and Mr. Reenstra were very clear in their testimony that there was no such attempt (ECF No. 29, Parker Decl. at ¶¶27-28), and Mr. Okoli (Oceanic's sole witness – via deposition) testified that he had "no idea" whether Section 2.2 was an "attempt by the parties to estimate or quantify in advance the damages." (Okoli Rule 30(b)(6) Dep. at 57:9-58:1.) Quite consistently, not a single exhibit introduced in this case suggests

directly or indirectly that there was any attempt to estimate future damages. There was no attempt, because Section 2.2 is not, and was never intended to be, a liquidated damages clause.

Additionally, any "estimate" necessary to create a true liquidated damages clause requires an actual attempt by the parties to estimate potential future damages or a formula in the subject contract to compute damages upon breach. *See, e.g.*, *GFI Brokers v. Santana*, No. 06 Civ. 2988, 2009 WL 2482130 (S.D.N.Y. Aug. 13, 2009) (calculating liquidated damages in an employment contract based on a complex formula); *Bigda v. Fischbach Corp.*, 849 F. Supp. 895 (S.D.N.Y. 1994) (calculating liquidated damages in an employment contract as a formula related to most recent pay and benefits); *BDO Seidman v. Hirschberg*, 712 N.E.2d 1220 (N.Y. 1999) (calculating liquidated damages for breach of a non-compete agreement based on formula to compute lost profits); *see also Walter E. Heller & Co., Inc. v. Am. Flyers Airline Corp.*, 459 F.2d 896 (2d Cir. 1972) (noting that the parties considered five elements of prospective damages when fixing the sum of liquidated damages); *The Edward Andrews Group, Inc. v. Addressing Servs. Co., Inc.*, No. 04-6731, 2005 WL 3215190 (S.D.N.Y. Nov. 29, 2005) (noting that the parties offered no evidence that the damages were readily ascertainable). It is undisputed that there never was such an attempt by Aircraft Services and Oceanic and there is no formula in the contracts from which to calculate a reasonable estimate.

Fifth, under New York law, valid liquidated damages clauses typically state expressly that the liquidated damages clause constitutes the sole remedy available in the event of a breach. *See* N.Y.U.C.C. § 2-719(1)(b) (stating that "resort to a remedy is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy"); *see also Vacold LLC v. Cerami et al.*, 545 F.3d 114, 130 (2d Cir. 2008) (noting that a liquidated damages provision does not preclude specific performance absent an express provision to this effect); *Crysen/Montenay Energy Co. v. Consol. Edison Co.*, 156 B.R. 922, 925 (S.D.N.Y. 1993) ("If the

parties intend the term to describe the sole remedy under the contract, this must be *clearly expressed*." (*quoting* N.Y.U.C.C. § 2-719(1)(b))).  Not only did the contracts not contain this language, but the parties clearly *did* use such language when they intended a contract to have a true liquidated damages provision.

At the same time that the parties were negotiating the contracts for the used helicopters, they were also engaged in contract negotiations for a new helicopter.  (ECF No. 29, Parker Decl.at ¶28; PX 42.)  A court may resolve contractual ambiguity by inquiring "into the customs, practices, usages and terminology of the parties' business." *Advanced Mktg. Group, Inc.*, 300 F. App'x at 49 (internal citation omitted).  And, other business transactions may be "relevant to prove the meaning of a contract in appropriate cases," specifically where there is "a clear course of dealing or habit of doing business" and a strong showing of similarity between the other contracts and the contested contracts.  *Cibro Petroleum Prods., Inc. v. Sohio Alaska Petroleum Co.*, 602 F. Supp. 1520, 1551-52 (N.D.N.Y. 1985).  The parties' negotiations for the new helicopter unmistakably reveal that Section 2.2 was intended to establish a nonrefundable deposit, and not liquidated damages.

The new helicopter agreement includes a liquidated damages clause that, according to the unrefuted testimony of Mr. Parker, sets forth the standard industry language to establish a true liquidated damages provision.  That agreement includes the following language that is noticeably missing from Section 2.2:  "the liquidated damages amount provided for … *is a reasonable estimate of the damages that would be incurred by Seller in the event Purchaser defaults*…"; and "Seller's right to receive liquidated damages … *shall be the sole remedy* available to Seller in the event Purchaser defaults…"  (PX 42 (emphasis added.))  Inclusion of this language in the liquidated damages clause in the new helicopter agreement evinces the parties' intent to exclude

liquidated damages from the disputed contracts.[4]  *See Cibro*, 602 F. Supp. at 1552 (holding that because similar, third party contracts contained cancellation clauses, the absence of a cancellation clause in the contested contract indicated that the parties did not intend to permit cancellation).

The following testimony of Mr. Parker is unopposed:

> 29.   Further, no reasonable person with any experience in this industry would ever consider $100,000 to be a reasonable estimate of Aircraft Services' potential damages if Oceanic defaulted on the Agreements.  Common sense supports this, as the $4,000,000 expressly deemed to be a reasonable estimate of anticipated damages in the New Helicopter Agreement is fully 40 times the $100,000 amount in the subject Agreements.
>
> 30.   In addition, the language of the New Helicopter Agreement is significant because it states that the $4,000,000 is the "sole remedy" available to the Seller upon breach and that the Seller is thereby waiving all other remedies.  See **Ex. 16** at 18 (Dep. Ex. 6).  There is no such similar language in the Agreements for the sale of the used helicopters.  The common custom and usage in the industry is to include such language when a provision is, in fact, a true liquidated damages clause limiting a contracting party's remedies upon breach.

(ECF No. 29, Parker Decl. at ¶¶29-30; *emphasis in original*.)

In summary, Oceanic's assertion that the plain language of Section 2.2 of the contracts unambiguously limits Seller's damages has failed, and Oceanic has not offered any evidence of the parties' intent in support of its interpretation of Section 2.2.  This Court may and should adopt Aircraft Services' unopposed interpretation of Section 2.2 ─ an interpretation that the Court of Appeals has already ruled is reasonable.  *See Compagnie Financiere de CIC et de*

---

[4] Any suggestion by Oceanic that Section 2.2 must be construed against its alleged drafter, Aircraft Services, is not supported by New York law.  *Contra proferentem* simply does not apply where, as here, the parties fully negotiated the contract in question.  *Painewebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996); *Mercury Partners LLC v. Pac. Med. Bldgs., L.P.*, No. 02 Civ. 6005, 2007 WL 2197830, at *9 (S.D.N.Y. July 31, 2007).  It is undisputed that the contracts were fully negotiated.  (Okoli Rule 30(b)(6) Dep. at 54:6-9 & 34:5-21.)

*L'Union Europeene v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 158 (2d Cir. 2000) ("A court may also grant summary judgment regarding the interpretation of ambiguous language if the non-moving party fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language."); *Continental Airlines, Inc. v. Lelakis*, 943 F. Supp. 300, 304 (S.D.N.Y. 1996) (citing *Giammettei*, 34 F.3d at 54-55) (granting summary judgment on defendant's affirmative defenses since defendant failed to offer evidence proving those defenses).

## II. The Amount of Aircraft Services' Actual Damages is Undisputed.

Aircraft Services' evidence of its actual damages is undisputed. Aircraft Services calculated its damages, in accordance with New York state law, as the difference between the value of the aircraft on the date of execution of the contracts and the value of the aircraft on the date of breach (July 2009), minus the deposit amounts paid toward the purchase price ($200,000 upon entering into the contracts, plus an additional $152,500 paid in November 2008, and $500,000 paid in June 2009), for a total of $6,914,166. *See* N.Y.U.C.C. § 2-708(1) ("[T]he measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together . . ."). Expert Ed Eckert and Mr. Reenstra fully supported this amount at trial. (Tr. at 38:6-17; 56:6-11.) Oceanic offered no evidence on the issue of damages and made no opposition to the amount. In fact, Mr. Okoli admitted in his Rule 30(b)(6) deposition that Oceanic is unaware of "any information about the value of the helicopters subject to the contracts." (Okoli Rule 30(b)(6) Dep. at 73:4-7), and the trial record is closed (ECF No. 39.)

## CONCLUSION

Oceanic admitted that it breached the contracts by not closing on the purchase of the helicopters, and Oceanic withdrew or abandoned all of its six, original affirmative defenses

-10-

except its defense that the claim for damages is "barred by the liquidated damages clause contained in the [contracts.]" (ECF No. 33, at p. 13, ¶¶ 6-7.) Despite bearing the burden of proof on its affirmative defense, Oceanic presented *no evidence* whatsoever at trial regarding the Seller's intent under Section 2.2. Rather, Oceanic relied completely on what it contended is the unambiguous meaning of Section 2.2 — a meaning that the Court of Appeals squarely rejected. This Court has closed the trial record with all parties stipulating that they had a full opportunity to present evidence and cross examine witnesses. (ECF No. 39.) Oceanic put all of its proverbial eggs in a single basket, but its strategy has failed. The trial record allows only one reasonable conclusion: Section 2.2 of the contracts does not limit Seller's damages, and Seller is entitled to its actual damages in the undisputed amount of $6,914,166.

For all of the reasons stated above, Aircraft Services respectfully requests the entry of judgment in its favor in the amount of $6,914,166.

Dated:  New York, New York  
       October 19, 2012

VENABLE LLP

By:  s/_____  
    J. Douglas Baldridge (JB8385)  
575 7th Street, NW  
Washington, DC  20004  
Tel:  (202) 344-4703  
Fax:  (202-344-8300  
jdbaldridge@venable.com

Caroline P. Gately (Not admitted in New York)  
575 7th Street, N.W.  
Washington, DC  20004  
Tel:  (202) 344-4744  
Fax:  (202) 344-8300  
cpgately@venable.com

*Attorneys for Aircraft Services Resales LLC*

-12-

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the foregoing Plaintiff Aircraft Services Resales, LLC's Post-Trial Brief to be filed electronically using the ECF System and to be sent via first class mail, postage prepaid, this 19th day of October 2012, to the following:

Robert Sentner
Nixon Peabody LLP
437 Madison Avenue
New York, NY 10022

*Attorney for Oceanic Capital Company Limited*

s/_____
J. Douglas Baldridge